# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA

Ray Anthony Harrison, #301982,    )
    )    C/A No. 0:08-3364-HFF-PJG
        Petitioner,    )
    )
    vs.    )
    )    **REPORT AND RECOMMENDATION**
Michael McCall, Warden,    )
    )
        Respondent.    )
_____)

This habeas corpus matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC on the respondent's motion for summary judgment (Docket Entry 22). The petitioner, Ray Anthony Harrison, a self-represented state prisoner, filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

The respondents filed a motion for summary judgment. (Docket Entry 22.) Pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the court advised the petitioner of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to the respondent's motion. (Docket Entry 25.) The petitioner filed a response in opposition to the respondents' motion for summary judgment on March 16, 2009. (Docket Entry 29.) Previously, on January 29, 2009, the petitioner had filed a motion to dismiss alleging that the time for the respondent to make a return had expired. (Docket Entry 21.) These motions are now before the court for a Report and Recommendation.

## BACKGROUND

The petitioner is presently confined in the Perry Correctional Institution, of the South Carolina Department of Corrections (SCDC). The Richland County Grand Jury indicted the petitioner at the May 2003 and January 14, 2004 terms of court, respectively, for twelve counts of

armed robbery (03-GS-40-1575, -1578, -1579, -1581 through -1584, -1738, -1777, -1778 and 04-GS-40-9177, & -9294), five counts of kidnapping (03-GS-40-1737& -1781 and 04-GS-40-0481, -0482, & -1577), one count of second degree burglary (03-GS-40-1573), four counts of carjacking (03-GS-40-1576, -1736 & -1779 and 04-GS-40-9178), possession of a firearm during the commission of a crime (03-GS-40-1780), two counts of grand larceny of a vehicle (03-GS-40-1782 and 04-GS-40-1650), assault with intent to kill ("AWIK") (04-GS-40-0478), attempted armed robbery (04-GS-40-0489), attempted escape (04-GS-40-2799), and one count of escape (04-GS-40-8963). (App. at 52-98; 105-17, Docket Entry 23-2 at 54-100, 107-19.) The respondent represents that the petitioner waived presentment and was directly indicted for one additional count of escape (04-GS-40-6567). The prosecution withdrew another armed robbery charge (03-GS-40-1574) at the guilty plea. (App. at 12, Docket Entry 23-2 at 14.)

The petitioner did not file a direct appeal.

The petitioner filed a *pro se* application for post-conviction relief ("PCR") on April 19, 2005 (2005-CP-40-1814). (App. at 100-04, Docket Entry 23-2 at 102-06.) He alleged the following grounds for relief in his Application:

1. Ineffective assistance of counsel in that counsel failed to investigate the circumstances of each of the crimes;

2. Ineffective assistance of counsel in that counsel failed to advise me of my right to appeal;

3. Ineffective assistance of counsel in that counsel should have moved to quash Applicant's confessions to the crimes;

4. Lack of subject matter/personal jurisdiction; and

5. Defective/perjury warrants.

(Id.) The State filed a Return on October 19, 2005. (App. at 147-52, Docket Entry 23-3 at 29-34.)

The Honorable L. Casey Manning held an evidentiary hearing, on January 11, 2007, at the Richland County Courthouse. (App. at 153-74, Docket Entry 23-3 at 35-56.) The petitioner was present at the hearing; Charlie J. Johnson, Jr., Esquire, represented him. (Id.) The petitioner testified on his own behalf and he presented the testimony of his trial counsel. (Id.)

On April 24, 2007, Judge Manning filed an Order of Dismissal, in which he denied relief and dismissed the Application with prejudice. (App. at 175-82, Docket Entry 23-3 at 57-64.) The Order of Dismissal addressed the petitioner's claims that trial counsel was ineffective because she failed to (1) investigate the alleged crimes; and (2) move to suppress the petitioner's confession. (App. at 176, Docket Entry 23-3 at 58.)

The petitioner timely filed a notice of appeal. Assistant Appellate Defender Kathrine H. Hudgins represented him in the collateral appellate proceedings. On March 21, 2008, Hudgins filed a Johnson[1] Petition for Writ of Certiorari and Petition to be Relieved as Counsel, in which he raised the following issue:

> Did the PCR judge err in refusing to find counsel ineffective for failing to investigate?

(Docket Entry 23-4.)

In addition, the petitioner filed a *pro se* response to the Johnson Petition for Writ of Certiorari, in which he asserted the following additional questions presented:

> 1. Was there erroneous sentencing advice and defendant plea?

---

[1] Johnson v. State, 364 S.E.2d 201 (S.C. 1988) (applying the factors in Anders v. California, 386 U.S. 738 (1967) to post-conviction appeals). Anders requires that counsel who seeks to withdraw after finding the "case to be wholly frivolous" following a "conscientious examination" must submit a brief referencing anything in the record that arguably could support an appeal; furnish a copy of that brief to the defendant; and after providing the defendant with an opportunity to respond, the reviewing court must conduct a full examination of the proceedings to determine if further review is merited. Anders, 386 U.S. at 744.

2.	Was defendant['s] guilty plea unknowingly and involuntarily entered?

3.	Did counsel['s] failure to move for motion to quash indictment[s]

4.	Was trial counsel ineffective for failing] to investigate defendant['s] case?

(Docket Entry 23-5.)  The South Carolina Supreme Court filed an Order on September 4, 2008, in

which it denied certiorari and granted counsel's petition to be relieved. (Docket Entry 23-6.)  The

remittitur was issued on September 25, 2008. (Docket Entry 23-7.)

## FEDERAL HABEAS ISSUES

In the petitioner's federal petition for a writ of habeas corpus, he raises the following issues:

**Ground One:**  Erroneous sentencing advice.
> **Supporting Facts:**  The Judge err for wrongly sentencing advice for letting the courts tell applicant that he was facing and would get a life sentence if he did not plea guilty when evidence from trial transcript page 46, lines 2 & 3 show that applicant [had] been on a crime spree is what the court said. And evidence from trial transcript page 5 & 6 show that no charge applicant had carried more than 30 years max.  Therefor[e] applicant was never facing a life sentence.

**Ground Two:**  Unknowlingly, unvoluntary and forced guilty plea.
> **Supporting Facts:**  The [judge] err for not finding applicant plea unknowlingly, unvoluntary and forced applicant to plea to charges he did not commit. Evidence from trial transcript page 40, line 17 & 18 and page 41, line 25 testimony that applicant could not read or write.  The courts w[ere] aware applicant did not thoroughly understood the nature of offenses. Judge just ran through charges, trial transcript pages 5 & 6 show it.

**Ground Three:**  Failure to investigate.
> **Supporting Facts:**  The judge err for not seeing that applicant['s] case was investigated he [k]new applicant['s] case was not investigated because judge had applicant plea to indictment knowing they have not been before the grand jury.  And evidence from PCR transcript page 5, lines 20 to 25, page 6, line 2 & 3 show that applicant['s] case has not been investigated at all.

**Ground Four:**  Failure to object to indictments being quashed before sentencing judge.
> **Supporting Facts:**  The judge err for failure to object to applicant['s] indictments being quashed.  Applicant presented evidence and testimony that at least 18 charges would have been thrown out or dismissed because of police report and victims['] statement[s] were in conflict with what actually



constituted the charge.  If the judge would have told applicant the elements of the charges applicant was facing, applicant would not have ple[d] guilty but for judge err the outcome of applicant['s] plea would have been different.

(Docket Entry 1.)

## DISCUSSION

### A.    Summary Judgment Standard

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Rule 56(c) mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted."  Id. at 248.

The moving party has the burden of proving that summary judgment is appropriate.  Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial.  See Fed. R. Civ. P. 56(e).  Further, while the federal court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case, see, e.g., Cruz v. Beto, 405 U.S. 319 (1972), the

requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

## B.    Habeas Corpus Standard of Review

### 1.    Generally

In accordance with § 2254, claims adjudicated on the merits in a state court proceeding cannot be a basis for federal habeas corpus relief unless the decision was "contrary to, or involved an unreasonable application of clearly established federal law as decided by the Supreme Court of the United States," or the decision "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(1), (2). When reviewing a state court's application of federal law, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams v. Taylor, 529 U.S. 362, 410 (2000); see also Humphries v. Ozmint, 397 F.3d 206 (4th Cir. 2005); McHone v. Polk, 392 F.3d 691 (4th Cir. 2004). Moreover, state court factual determinations are presumed to be correct and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### 2.    Exhaustion Requirement

A habeas corpus petitioner may obtain relief in federal court only after he has exhausted his state court remedies. 28 U.S.C. § 2254(b)(1)(A). "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court." Matthews v. Evatt, 105 F.3d 907, 911 (4th Cir. 1997). Thus, a federal court may consider only those issues which have been properly

presented to the highest state courts with jurisdiction to decide them. Generally, a federal habeas court should not review the merits of claims that would be found to be procedurally defaulted (or barred) under independent and adequate state procedural rules. Lawrence v. Branker, 517 F.3d 700, 714 (4th Cir. 2008); Longworth v. Ozmint, 377 F.3d 437 (4th Cir. 2004); see also Coleman v. Thompson, 501 U.S. 722 (1991). For a procedurally defaulted claim to be properly considered by a federal habeas court, the petitioner must "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750.

## C.   Ground One:  Sentencing Advice

The petitioner first contends that the trial judge erred in advising him that he was facing a life sentence for the pending charges if he refused to enter a guilty plea. The petitioner claims that he was facing no more than a maximum of thirty years for any of the pending charges. The petitioner has not pled this ground as one for ineffective assistance of counsel either in giving, or in failing to object to, improper sentencing advice. The ground is characterized exclusively and expressly as an error of the state trial court and not as one for ineffective assistance of counsel.

In terms of whether the petitioner allowed the State of South Carolina a fair opportunity to consider his federal claim before raising it here in federal court as part of his habeas petition, see Smith v. Murray, 477 U.S. 527, 533 (1986), the difference is material. If the petitioner is challenging an act of the presiding judge, then the petitioner was required to file a direct appeal on that issue or it is considered abandoned. See Blakeley v. Rabon, 221 S.E.2d 767, 770 (S.C. 1976); see also Drayton v. Evatt, 430 S.E.2d 517, 520 (S.C. 1993) (holding issues that could have been raised at trial or in direct appeal cannot be asserted in PCR application absent a claim of ineffective assistance of counsel); Rule 208, SCACR. He did not. Over that fact there is no dispute. For this reason, the

claim would be procedurally defaulted in the state system. In other words, the petitioner would not be permitted to ever again challenge the acts of the presiding judge through any state court process because he abandoned that argument when he failed to directly appeal it. The only way Ground One, as pled against the trial court, could ever be considered by this court, therefore, is if the petitioner could show cause for his failure to directly appeal the matter and prejudice flowing from the same. See Murray v. Carrier, 477 U.S. 478, 496 (1986). The petitioner has made no attempt whatsoever to establish either cause or prejudice. Accordingly, the court cannot excuse his procedural default in state court such that Ground One can now be considered here.

If, however, the petitioner means to argue Ground One as one for ineffective assistance of counsel, see Strickland v. Washington, 466 U.S. 668 (1984), then the petitioner was required to raise that claim in the course of his post-conviction relief application and process, see S.C. Code Ann. § 17-27-10 et seq; Drayton, 430 S.E.2d at 520. The petitioner summarily contends that he did. (Petr.'s Resp. Opp'n Summ. J. at 2, Docket Entry 29 at 2.) The respondent does not reject that Ground One was essentially included in the petitioner's *pro se* PCR application and argued at the PCR hearing. (App. at 100-04, 171-72, Docket Entry 23-2 at 102-06 and Docket Entry 23-3 at 53-54.) The respondent, however, contends that the substance of the petitioner's federal habeas Ground One was not included in the brief appealing the PCR Order of Dismissal, filed by his attorney, pursuant to Johnson v. State, 364 S.E.2d 201 (S.C. 1988) (outlining procedure for counsel to follow when filing meritless appeals in state PCR cases pursuant to Anders v. California, 386 U.S. 738 (1967)). (Docket Entry 23-4 at 3.) The petitioner did, however, include the substance of Ground One, framed as one for ineffective assistance of counsel, in his *pro se* response to the Johnson brief. (Docket Entry 23-5 at 2.)

The respondent argues that the *pro se* response was insufficient to exhaust the ground in state court because (1) the petitioner did not raise the issue in his actual Johnson Brief and (2) he did not file a Rule 59(e) motion in regards to the PCR court's Order of Dismissal, Rule 59(e), SCRCP. The court agrees that the petitioner's failure to file a 59(e) motion regarding the PCR court's order of dismissal would bar the South Carolina Supreme Court's review of the issue. Pruitt v. State, 423 S.E.2d 127, 128 (S.C. 1992). The PCR court in this case did not address the substance of the petitioner's present Ground One (App. at 175-82, Docket Entry 23-3 at 57-64)—that he was given erroneous advice concerning the possible maximum sentence—although it was, in fact, argued at the PCR hearing (App. at 171-72, Docket Entry 23-3 at 53-54). Accordingly, the petitioner was required to file a Rule 59(e) motion to request a formal ruling on that issue from the PCR court. Al-Shabazz v. State, 527 S.E.2d 742, 747 (S.C. 2000). It is undisputed that he did not. The South Carolina Supreme, therefore, could not entertain the issue as a procedural matter. See Pruitt, 423 S.E.2d at 128.

The South Carolina Supreme Court's order denying the petitioner's writ of certiorari from the PCR court's order of dismissal, however, does not provide the bases for its denial. (Docket Entry 23-6.) Accordingly, it is not clear from the face of that order whether denial was based on application of federal constitutional law or some independent and adequate state law ground, including procedural default, to wit, a failure to file a Rule 59(e) motion in the PCR court. It of course is well-settled that if the determination of the state supreme court rests on independent and adequate state law grounds, then no federal habeas review of that decision may lie. Harris v. Reed, 489 U.S. 255, 262 (1989). The respondent argues—and the court agrees—that where circumstances make it clear that "claims presented to the state court were subject to summary denial on procedural grounds under state law," the federal court may presume that the denial "fairly appears" to rest on

an adequate and independent state ground.   Coleman v. Thompson, 501 U.S. 722, 738 (1991); Wilson v. Moore, 178 F.3d 266, 276 (4th Cir. 1999).  In this present case, there are no circumstances that would suggest anything other than that the South Carolina Supreme Court's dismissal was upon state procedural grounds.  The certitude and clarity of the applicable procedural rule is relevant indicia that it was relied upon in an otherwise ambiguous order of the state court.  See Wilson, 178 F.3d at 276.  Rule 59(e) and Pruitt would have unequivocally barred consideration of the sentencing advice issue and it is, therefore, reasonable to presume that the South Carolina Supreme Court's order implicitly relied on that basis.

As a result, the petitioner did not exhaust the substance of Ground One in the state system, which did not have a full opportunity to resolve it.  Accordingly, the petitioner would again have to show cause and prejudice for such a failure, which he has failed to do.[2]

Even if Ground One were not procedurally barred, the court would recommend dismissal on the merits.[3]  Even assuming that the South Carolina Supreme Court did reject the petitioner's ineffective assistance claim on the merits and that it rejected such claim upon some interpretation

---

[2]In summary fashion and unrelated to Ground One, the petitioner claims that he asked his PCR counsel to file a Rule 59(e) motion but that his counsel failed to do so.  (Petr.'s Resp. Opp'n Summ. J. at 3, Docket Entry 29 at 3.)  Because the petitioner has no right to PCR counsel, however, attorney ignorance or inadvertence does not qualify as "cause" to excuse a procedural default in state court.  Coleman, 501 U.S. at 752-53.  The attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must "bear the risk of attorney error."  Id. (citations omitted).

[3]In Kornahrens v. Evatt, 66 F.3d 1350 (4th Cir. 1995), the Court of Appeals stated that once a claim is determined to be procedurally barred, the court should not consider the issue on its merits.  The court noted that it is always tempting to discuss the merits as an alternative reason for a conclusion, but that once a court finds an issue to be procedurally barred, all discussion which follows is only dicta.  See Karsten v. Kaiser Foundation Health Plan, 36 F.3d 8, 11 (4th Cir. 1993).  Therefore, once a court has determined that a claim is procedurally barred, it should not stray into other considerations.  But because the court is uncertain as to whether the district court will agree with the court's exhaustion analysis, out of considerations of efficiency, a merits analysis will be included.

of federal constitutional law, it cannot be said that application of said constitutional law was unreasonable. As stated, claims of ineffective assistance of counsel are governed by the two-part test established in Strickland v. Washington, 466 U.S. 668 (1984). First, the petitioner "must show that counsel's performance was deficient." Id. at 687. To prove deficiency, the petitioner "must show that counsel's representation fell below an objective standard of reasonableness." Id. at 688. Second, the petitioner must show that the deficient performance actually prejudiced him, i.e. "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. Finally, the Court in Strickland held that "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies," and "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." Id. at 697. Review of counsel's performance is "highly deferential." Id. at 689.

The petitioner's trial counsel testified at the PCR hearing that one of her primary goals was to avoid, for the petitioner, the possibility of a life sentence without parole. (App. at 177, Docket Entry 23-3 at 59.) Her recommendation that he faced such a possible sentence does not fall below an objective standard of reasonableness because the petitioner did, in fact, face the threat of such an outcome.

As stated, the Richland County Grand Jury indicted the petitioner at the May 2003 and January 14, 2004 terms of court, respectively, for twelve counts of armed robbery, five counts of kidnapping, one count of second degree burglary, four counts of carjacking, possession of a firearm during the commission of a crime, two counts of grand larceny of a vehicle, assault with intent to kill ("AWIK"), attempted armed robbery, attempted escape, and one count of escape. (App. at 52-

98, 105-117, Docket Entry 23-2 at 54-100, 107-19.)  The petitioner waived presentment and was directly indicted for one additional count of escape.

The respondent concedes that none of these crimes carried a life sentence, by itself.  The respondent argues, however, that the petitioner faced the possibility of life without parole as a recidivist under S.C. Code Ann. § 17-25-45.  Section 17-25-45 states:

(A) Notwithstanding any other provision of law, except in cases in which the death penalty is imposed, upon a conviction for a most serious offense as defined by this section, a person must be sentenced to a term of *imprisonment for life without the possibility* of parole if that person has *one or more prior* convictions for:

(1) a most serious offense;

(2) a federal or out-of-state conviction for an offense that would be classified as a most serious offense under this section; or

(3) any combination of the offenses listed in items (1) and (2) above.

(B) Notwithstanding any other provision of law, except in cases in which the death penalty is imposed, upon a conviction for a serious offense as defined by this section, a person must be sentenced to a term of *imprisonment for life without the possibility* of parole if that person has *two or more* prior convictions for:

(1) a serious offense;

(2) a most serious offense;

(3) a federal or out-of-state offense that would be classified as a serious offense or most serious offense under this section; or

(4) any combination of the offenses listed in items (1), (2), and (3) above.

S.C. Code Ann. § 17-25-45 (emphasis added).

The petitioner, therefore, faced a possibility of life without parole if he (1) was convicted of a "most serious offense" and had one or more prior convictions for a "most serious offense" or (2) was convicted of a serious offense and had two or more prior convictions for a "serious offense."  Id.  At the time of his guilty plea, the petitioner had no such actual convictions, most serious or

serious, as far as the court can tell. The petitioner, however, on the date of his plea, was facing over twenty separate charges. The twelve indictments charging the petitioner with armed robbery, the five indictments charging him with kidnapping, the four counts of carjacking, and the indictment for assault with intent to kill were all for "most serious offenses," as defined in S.C. Code Ann. § 17-25-45(C)(1). The charge of burglary in the second degree was a "serious offense" under § 17-25-45(C)(2). Accordingly, if the petitioner was convicted on one of the armed robbery counts or one of the kidnapping counts or one of the carjacking counts or on the AWIK count and then was subsequently also convicted of any one of the remaining twenty counts of armed robbery, kidnapping, or carjacking, he would be potentially facing a mandatory sentence of life without parole. See S.C. Code Ann. § 17-25-45.

The petitioner would argue that no such convictions could ever qualify as "prior" convictions for a "most serious offense," as required by the statute, because all of the charges arise out of offenses committed so closely in time as to be considered one offense. See S.C. Code Ann. § 17-25-50. It is true that Section 17-25-50 of the South Carolina Code states:

> In determining the number of offenses for the purpose of imposition of sentence, the court shall treat as one offense any number of offenses *which have been committed at times so closely connected in point of time that they may be considered as one offense*, notwithstanding under the law they constitute separate and distinct offenses.

Id. (emphasis added). The South Carolina Supreme Court, however, has interpreted Section 17-25-50 to relate to "one continuous course of conduct," as exemplified by an armed robbery conviction stemming from a single incident but involving two different victims or where a conviction is sought for both trafficking and conspiracy to traffic crack cocaine. Koon v. State, 643 S.E.2d 680, 681 (S.C. 2007).

The petitioner's offenses are not so related. Just a sampling of the indictments indicates that they are not for multiple offenses flowing from the same incident but, rather, for multiple incidents, although sometimes involving multiple offenses:

> January 30, 2003 (robbery)
> January 30, 2003 (carjacking)
> February 4, 2003 (carjacking)
> February 11, 2003 (carjacking)
> February 15, 2003 (kidnapping)
> February 15, 2003 (robbery - 2 counts)
> February 17, 2003 (robbery - 6 counts on same day)
> February 23, 2003 (robbery)
> February 23, 2003 (carjacking)
> February 23, 2003 (kidnapping)

(See App. at 52-98, Docket Entry 23-2 at 54-100.) These offenses occurred on numerous occasions over a two-month period. It would seem a strange interpretation of the statute to treat such disparate incidents as one, simply because they are of the same habitual kind and committed within a two months' time of each other. It may be true that a crime spree might qualify as one course of conduct, where committed in a narrow window of hours. Cf. State v. Benjamin, 579 S.E.2d 289, 289-90 (S.C. 2003) (finding two armed robberies and murder committed within a four-hour period to be one incident) overruled by State v. Gordon, 588 S.E.2d 105 (S.C. 2003). But such is not the case here. The petitioner faced numerous convictions for incidents occurring on various and separate occasions. It was not unreasonable to fear that such offenses would be treated as separate under Section 17-25-50 and for purposes of Section 17-25-45.

But the court need not decide it definitively. Even if the state court had ultimately concluded that all of the petitioner's offenses should have been actually considered as one large and continuous crime spree under Section 17-25-50, which seems doubtful, the petitioner's counsel was still not unreasonable in her warning that the petitioner, in fact, faced the *possibility* of life without parole. In fact, it would have been begging an ineffective assistance claim to have *not* so advised. The risk

that the petitioner could have been treated as a recidivist under the statute was real, even if uncertain. Trial counsel's actions were objectively reasonable, even assuming they were ultimately erroneous, under the circumstances.

For all of these reasons, the state court's application of <u>Strickland</u>, wherever found, and to whatever degree implicitly or expressly made, could not have been, and was not, unreasonable.

**D.    Ground Two:  Involuntary Guilty Plea**

The petitioner next contends that his guilty plea was unknowingly given and not voluntary. The petitioner argues that he could not read or write and that the trial court was aware that he did not understand the nature of the offenses.  For the same reasons discussed with regard to Ground One, the court is barred from considering Ground Two.  The petitioner never received a ruling on the issue of the voluntariness of his plea from the PCR court (App. at 175-82, Docket Entry 23-3 at 57-64) and he failed to file a Rule 59(e) motion to obtain one.  Accordingly, it was not exhausted and is barred from consideration in the absence of a showing of cause and prejudice.  Again, the petitioner offers none.

To the extent the district court disagrees, the petitioner's claim is without any support as a substantive matter.  The record indicates that he was apprised of the charges against him by both his counsel and the court.  (App. at 4-18, Docket Entry 23-2 at 6-20.)  He was asked whether he understood those charges and their concomitant penalties.  (App. at 6, 9, Docket Entry 23-2 at 8, 11.) The petitioner was specifically asked whether his plea was coerced in any way and he denied that it was.  (App. at 8, 9, Docket Entry 23-2 at 10, 11.)  The petitioner has not made any specific argument in support of his contention that the plea was unknowingly and involuntarily made.  The bald-faced allegation that he could not read or write does not, as a matter of law, render his plea involuntary or somehow uninformed.  <u>See</u>, e.g., <u>Sanchez v. United States, Nos. 8:05-cr-498-T-</u>

17MAP, 8:08-cv-2311-T-17MAP, 2009 WL 812064, at *4 (M.D. Fla. March 25, 2009) ("The mere fact that he may have been illiterate and lacked any formal education at the time he entered his plea did not render him incompetent to do so."). He has made no effort to explain how he could not understand the charges against him, either as explained by his attorney or the trial court, or even what portions of the charges he now claims that he did not understand then.

To the extent the state court reviewed and denied this claim on federal grounds, application of such law could not have been unreasonable insofar as the petitioner's illiteracy, in the absence of some other aggravating circumstances, is insufficient to render his plea either involuntary or unknowing.

### E.    Ground Three: Failure to Investigate

The petitioner's third ground for relief alleges that his trial counsel was ineffective for failing to investigate the charges against him. The petitioner's claim is utterly non-specific. A review of the PCR court's decision,[4] however, makes plain that it made no unreasonable application of the ineffective assistance of counsel standard prescribed by Strickland. The PCR court accurately stated Strickland's two-pronged test and, further, identified the level of performance required. (App. at 179-80, Docket Entry 23-3 at 61-62.) The PCR court then recognized that "[w]ith respect to guilty plea counsel, the Applicant must show that there is a reasonable probability that, but for counsel's alleged errors, he would not have pled guilty and would have insisted on going to trial." (App. at 180, Docket Entry 23-3 at 62 (citing Hill v. Lockhart, 474 U.S. 52, 59 (1985)).

In light of Strickland and Hill, the PCR court found as follows:

---

[4]The court finds that the relevant decision for review is the PCR court's order. See Felton v. Barnett, 912 F.2d 92, 94 (4th Cir. 1990) ("The denial of the petition for certiorari was not . . . the last state court judgment" for purposes of applying Harris, because "the denial of such a writ is not a judgment but is simply a refusal to hear the appeal.").

As to the allegation that counsel was ineffective for failing to investigate these crimes, this Court finds this claim is without merit. It is clear from counsel's testimony that Applicant indicated he wished to have a plea instead of trial. Counsel testified that she reviewed the discovery with Applicant and discussed the facts and evidence of each crime. Once counsel knew the case would not proceed to trial, there was no investigation necessary. Counsel testified that she would have continued to investigate had Applicant expressed an interest in going to trial. Accordingly, this allegation is denied and dismissed.

(App. at 180, Docket Entry 23-3 at 62.) The petitioner does not explain how this application of Strickland should be considered unreasonable, beyond his summary contention that the transcript makes clear somehow that his case had "not been investigated at all."[5] (Pet. at 9, Docket Entry 1 at 8.)

"Because a guilty plea is valid only if it represents a knowing and voluntary choice among alternatives," defense counsel has a duty to investigate possible defenses and to advise the defendant so that he can make an informed decision. Savino v. Murray, 82 F.3d 593, 599 (4th Cir. 1996); see also Via v. Superintendent, Powhatan Corr. Ctr., 643 F.2d 167, 174 (4th Cir. 1981) (discussing the duties and obligations of defense counsel). But, there is no prejudice if there was no reasonable probability that any such alternative defenses would have succeeded at trial. Hill, 474 U.S. at 59; Savino, 82 F.3d at 599.

The petitioner has not explained what defenses were hidden from him as a result of his counsel's alleged failure to investigate or how such defenses enjoyed a reasonable probability of

_____

[5]The respondent also preemptively addresses various matters previously asserted by the petitioner in his state court pleadings but not raised now. The court is generally at a loss as to how any such issues are implicated by the petitioner's Ground Three. That ground is a generalized complaint that trial counsel did not investigate his case. The court will not gratuitously construe Ground Three to implicate these myriad other issues discussed by the respondent in anticipation of what the petitioner may have meant. See Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985) (stating that a court cannot "conjure up questions never squarely presented" to it).

success at trial. In fact, the petitioner's response is completely silent as to Ground Three.[6] His Petition is no more specific. (Pet. at 9, Docket Entry 1 at 8.) There, the petitioner cites to pages 5 and 6 of the record ostensibly as evidence of trial counsel's failure to investigate. A review of those pages reveals no such error.

The PCR court found that the petitioner wanted to avoid trial and that his counsel reviewed with him the facts and evidence. (App. at 159-61, 180, Docket Entry 23-3 at 41-43, 62.) There is no basis to conclude that the PCR court's determination was an unreasonable application of Strickland and Hill. The PCR court specifically found that trial counsel discussed with the petitioner the possibility of moving to suppress his confession were the case to proceed to trial. (App. at 180, Docket Entry 23-3 at 62.) Trial counsel said that it was her view that such a motion was without merit but that she would have so moved had the case proceeded. (Id.) The PCR court specifically found that trial counsel fully informed the petitioner of his defenses. (App. at 181, Docket Entry 23-3 at 63.) As stated, the petitioner has not made any argument or showing with regard to defenses not discussed but which might have had a reasonable probability of success.

Ground Three affords no basis for habeas relief.

## F. Ground Four: Quashing Indictments

Finally, the petitioner contends that his trial counsel[7] was ineffective for failing to move to quash eighteen of the indictments against him because the police reports and victim statements were in conflict. This ground has also not been properly exhausted for the same reasons as discussed with

---

[6]As far as the court can tell, the petitioner, in regards to Ground Three, simply reiterates his Ground Two argument that he cannot read and write. (Petr.'s Resp. Opp'n Summ. J. at 3, Docket Entry 29 at 3.)

[7]The petitioner has again framed his claim as against the trial judge. To the extent that is what he actually intended, he failed to exhaust such a claim because he never made any direct appeal of the issue.

regard to Grounds One and Two. It was not a matter discussed by the PCR court (App. at 176, Docket Entry 23-3 at 58) and the petitioner never filed any Rule 59(e) motion to secure a ruling. As discussed, any failure of PCR counsel to file such a motion does not constitute "cause" to excuse the lack of exhaustion. See Coleman, 501 U.S. at 752-53; see also Mackall v. Angelone, 131 F.3d 442, 449 (4th Cir. 1997) (noting that there is "no right to effective assistance of counsel in . . . state habeas proceedings"). Accordingly, Ground Four is procedurally barred.

As to the merits of the claim, the petitioner has not explained why the conflict between the reports and statements would have legally supported a motion to quash. He does not even describe the nature or substance of the alleged conflicts. He seems to contend that if he had been properly apprised of the "elements of the charges" that he "was facing," then he would not have pled guilty. As discussed, the record reflects that both the trial judge and trial counsel discussed with the petitioner the charges against him. (App. at 4-18, 159-61, Docket Entry 23-2 at 6-20 & Docket Entry 23-3 at 41-43.)

The court cannot determine from the petitioner's submissions any basis to find either trial court error or ineffective assistance of counsel. Therefore, the petitioner is not entitled to federal habeas relief on this ground.

G.    The Petitioner's Motion to Dismiss

The petitioner has also filed a motion to dismiss alleging that the respondent has failed to comply with court orders such that the court should "dismiss the case" and find the respondent in "default." There is no basis to grant such relief. The court would presume that the petitioner means to request that habeas relief be granted to him based on the procedural failings of the respondent and not actually that the case be dismissed. This, however, is not possible. As of the time of the petitioner's motion, the respondent had been given appropriate extensions of time in which to make

his return and motion for summary judgment. (Docket Entries 11 & 16.) Moreover, default judgments are not appropriate in the habeas corpus setting. See Bleitner v. Welborn, 15 F.3d 652, 653 (7th Cir. 1994) (stating that the respondent's untimely response to a petition does not entitle the petitioner to default); Gordon v. Duran, 895 F.2d 610, 612 (9th Cir. 1990) ("The failure to respond to claims raised in a petition for habeas corpus does not entitle the petitioner to a default judgment."); United States ex rel. Mattox v. Scott, 507 F.2d 919, 924 (7th Cir. 1974) (holding that default judgment is not an appropriate remedy for a state's failure to file a timely return to a habeas corpus petition). The petitioner's motion should be denied.

## RECOMMENDATION

For the foregoing reasons, the court recommends that the respondent's motion for summary judgment (Docket Entry 22) be granted and that the petitioner's motion to dismiss (Docket Entry 21) should be denied.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

August 20, 2009
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the district judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985).